FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 3 1 2019

at 2 o'clock and 40 min. P M
SUE BEITIA, CLERK

# UNITED STATES DISTRICT COURT
# DISTRICT OF HAWAII

**(Civil Rights, RICO)**
Case No. CV 19-00275-JAO-RT

---

## NOTICE OF REMOVAL AND COMPLAINT
## PURSUANT TO THREE STATE CONSOLIDATED CASES RIPE
## FOR INJUNCTIVE RELIEF TO ENJOIN MALICIOUS PROSECUTION
## AND DEPRIVATION OF RIGHTSIN REAL PROPERTY CONVERSION

---

### JASON HESTER v. LEONARD G. HOROWITZ, et. al.
and
### LEONARD G. HOROWITZ
### and SHERRI KANE,
Counterclaimants
vs.
PAUL J. SULLA, JR., and
PAUL J. SULLA, JR., ATTORNEY AT LAW, A LAW CORPORATION;
HALAI HEIGHTS, LLC; PATRICK SNIFFEN; BRADLEY R. TAMM;
HOWARD M.S. HU; GARY VICTOR DUBIN; STEPHEN D.
WHITTAKER; and JOHN S. CARROLL
Third Party Counterclaim Defendants

LEONARD G. HOROWITZ, pro se
SHERRI KANE, pro se
5348 Vegas Drive, Suite 353
Las Vegas, NV 89108
Tel: 310-877-3002;
Email: Editor@MedicalVeritas.org

i

# TABLE OF CONTENTS

**(for NOTICE OF REMOVAL AND COMPLAINT PURSUANT TO THREE STATE CONSOLIDATED CASES RIPE FOR INJUNCTIVE RELIEF TO ENJOIN MALICIOUS PROSECUTION AND DEPRIVATION OF RIGHTS IN REAL PROPERTY CONVERSION)**

Table of Contents………………………………………………….........................i-v

NOTICE OF REMOVAL .......................................................................vi-viii

I. NOTICE OF REMOVAL & COMPLAINT…………....................................1

 I.  NOTICE OF REMOVAL…………………………………………....1-22

  A. FACTS JUSTIFYING REMOVAL AND COMPLAINT.......................................2-11

  B. GROUNDS FOR REMOVAL.......................................................11

    1. 'Colorado River' Analysis Encourages Federal Adjudication..............13

    2. Removal is Required to Redress the DCs' Deprivation of Federal Rights by Malicious Prosecutions in the State Courts................................17

  C. THE OTHER PREREQUISITES FOR REMOVAL ARE SATISFIED.................21

 II. COMPLAINT FOR DEPRIVATION OF RIGHTS & INJUNCTIVE RELIEF.....23

    I. JURISDICTION AND VENUE..........................................................24
    II. PARTIES............................................................................24

 III. FACTS (See facts section above.) .........................................................27

 IV. CIVIL CLAIMS......................................................................28

    COUNT I - VIOLATION OF 42 U.S.C. § 1983: Deprivation of civil rights............28
    COUNT II -VIOLATION OF 42 U.S.C. § 1981(a)(b)(c):
      Equal Rights Under the Law...........30
    COUNT III - VIOLATION OF 15 U.S.C. §§ 1692 et. seq.: False and misleading
      representations in debt collection, and unfair practices.............................33
    COUNT IV - VIOLATION OF HRS §§ 480-2 and 480-8: UDAP............................34
    COUNT V - LEGAL MALPRACTICE [Haw. Rev. Stat. § 657(1) .........................35
    COUNT VI - Claim to Set Aside Fraudulent Transfer of Property Title
      HRS §651C Uniform Fraudulent Transfer Act] ................................................38
    COUNT VII: Conversion of Real Property .............................................39
    COUNT VIII: Neglect to Prevent [42 U.S. Code § 1986. Actn neglect to prevent....42

**COUNT IX** - Trespass to Chattels [Restatement (Second) of Torts § 256] .......44

**COUNT X** - Defamation and/or Commercial Disparagement [Lanham Act] ...........45

**COUNT XI** - IIED [[Haw. Rev. Stat. § 663-1 (2015)] ........................................46

**COUNT XII** – Wrongful Foreclosure [[Haw. Rev. Stat. § 657-1 (2015)] .................47

**COUNT XIII** – RICO [[18 U.S.C. § 1964)] .............................................................50

**V. THE COURT'S POWER TO GRANT RELIEF** ..........................................................51

**DECLARATION OF LEONARD G. HOROWITZ and SHERRI KANE**
**APPENDIX "A"**
    **[Eleven 'Operative Facts' Showing Due Process Deprivations in the State's MO]**
**APPENDIX "B" Federal and State Laws & Rules**
**EXHIBITS 1 THRU 5;**
**EX PARTE MOTION TO SHOW CAUSE**
    **PROPOSED INJUNCTIVE RELIEF BY WRIT OF EJECTMENT**
**NOTICE OF SERVICE OF NOTICE OF REMOVAL;**
**SUMMONS**

**TABLE OF AUTHORITIES**

**CASES**

Attwood v. Mendocino Coast Dist. Hosp.,.......................................................................14

*Bank of Am. Nat. Trust & Sav. Ass'n v. Reidy,*
15 Cal. 2d 243, 248 (Cal. 1940).....................................................................................48

*Benoist v. U.S. Bank Nat'l Ass'n, as Trustee for JPM ALT 2006-A6, et al.,*
Civ. No. 10-00350JMS-KSC 886 F.2d 241, 243 (9th Cir. 1989)...............................16

*Blair,* 96 Hawai`i at 332, 31 P.3d at 189.......................................................................49

*Buckner,* 179 F.3d at 837...............................................................................................41

*Cabrera v. City of Huntington Park,*
159 F.3d 374, 380 (9th Cir.1998)..................................................................................41

*Cunha v. Ward Foods, Inc.,*
501 F.Supp. 830, 837 (D.Haw.1980).............................................................................48

*Damico v. California,*
389 U. S. 416 (1967).......................................................................................................19

*Dennis v. Sparks,*
449 U.S. 24, 27 (1980)).................................................................................................19

*McNeese v. Board of Education,*
373 U. S. 668 (1963).......................................................................................................19

*Fries,* 355 N.Y.S.2d at 744............................................................................................42

*King v. Smith,*
392 US 309 - 1968).........................................................................................................19

*Kondaur Capital Corp. v. Matsuyoshi,*
136 Hawai'I 227, 240, 361 P. 3d 454, 467 (2015)........................................................17

Leslie v. Estate of Tavares,
93 Hawai`i 1, 5, 994 P.2d 1047, 1051 (2000)..........................................................49
*Lona v. Citibank, N.A.,*
202 Cal. App. 4th 89, 104 (Cal. Ct. App. 2011)....................................................48
*FREDDY NOBRIGA ENTERPRISES v. STATE, DHHL,*
295 P. 3d 993 – Haw: Intermediate Court of Appeals 2013....................................39
*Harris v. Bankers Life and Cas. Co.,*
425 F. 3d 689 – Court of Appeals, 9th Circuit 2005...............................................21
*Kahala Royal Corporation v. Goodsill, Anderson, Quinn & Stifel, et. al.*
Supreme Court of Hawaii, Appeal No. 26669 & 26670, Jan. 11, 2007...................36
*Lovern v. General Motors Corp.,*
121 F.3d 160, 162 (4th Cir.1997)..........................................................................21
*Leyson v. Steuermann.*
705 P.2d 37, 1985................................................................................................36
*McNeese v. Board of Education,*
373 U. S. 668 (1963) ..........................................................................................21
*Monroe v. Pape,* 365 U. S. 167, 180-183 (1961) .................................................19
Montanore Minerals, 867 F.3d at 1166..................................................................14
*Nakamoto v. Hartley,*
758 F. Supp. 1357 (D. Haw. 1991) ......................................................................48
*Nunez v. City of Los Angeles,*
147 F. 3d 867 – Court of Appeals, 9th Circuit 1998.............................................20
*Rendell-Baker v. Kohn,*
457 U.S. 830, 838 (1982......................................................................................19
R.R. St. & Co. v. Transp. Ins. Co.,
656 F.3d 966,] 978-79 [(9th Cir. 2011)] ...............................................................14
*Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) .................................50
*Spotted Eagle v Blackfeet Tribe of Blackfeet Indian Res., City of Browning,*
301 F. Supp. 85 – Dist. Court, D. Montana 1969) ...............................................19
*Sutton v. Providence St. Joseph Med. Ctr.,*
192 F.3d 826, 835 (9th Cir. 1999) .......................................................................19
*Tsuru v. Bayer,*
25 Haw. 693, 696 (1920) ................................................................................... 40
United Mine Workers v. Gibbs,
383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) .............................................19
*United States v. Acosta de Evans,*
531 F. 2d 428 – Court of Appeals, 9th Circuit 1976..............................................20
*United States v. Chadwick,*
433 U.S. 1, 8, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977) ..................................40
*UNITED STATES FIRE INSURANCE COMPANY v.*
*HAWAIIAN CANOE RACING ASSOCIATIONS,* Dist. Court, D. Hawaii 2019...................13-15
144 Hawai`i 60 434 P.3d 1255  (2019).............................................................3,17,20

# FEDERAL RULES AND LAWS

11 U.S. Code §§ 448-550.............................................................................. 8
15 U.S.C. § 1125(a) .....................................................................................45
15 U.S.C. §§ 1692........................................................................................33
18 U.S.C. § 1961..........................................................................................50
18 USC 1964............................................................................................24, 50
28 §§ U.S.C. 1343(a)(1-4) ........................................................... 11-13, 18 24
28 U.S.C. § 1391(b.......................................................................................24
28 U.S.C. § 1446(a) .....................................................................................22
28 § 1450.......................................................................................... 11-13, 18
42 U.S.C. § 1981.................................................................................24 30-32
42 U.S.C. § 1983................................................................................24, 28-30
42 U.S.C. § 1985.........................................................................................24
42 U.S.C. § 1986..................................................................................24, 42
42 U.S.C. § 1988..................................................................................24, 53
Restatement (Second) of Torts § 256............................................................44

# HAWAII RULES AND LAWS

## HAWAII RULES OF CIVIL PROCEDURE (HRCP)

Rule 1.......................................................................................................... 5
Rule 19(a)................................................................................................. 5, 20
Rule 50(a)...................................................................................5-7,10-12, 20

LEONARD G. HOROWITZ
and SHERRI KANE, pro se
5348 Vegas Drive, Suite 353
Las Vegas, NV 89108
Tel: 310-877-3002;
Email: Editor@MedicalVeritas.org

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII
### ICA Nos. CAAP-16-0000162,  CAAP-16-0000163,  CAAP-18-0000584

| | |
|---|---|
| JASON HESTER<br>Plaintiff/Counterclaim<br>Defendant<br>vs.<br>**LEONARD G. HOROWITZ**<br>**and SHERRI KANE,**<br>Defendants<br><br>and<br><br>**LEONARD G. HOROWITZ**<br>**and SHERRI KANE,**<br>Counterclaimants<br>vs.<br>PAUL J. SULLA, JR., and<br>PAUL J. SULLA, JR., ATTORNEY<br>AT LAW, A LAW<br>CORPORATION;<br>HALAI HEIGHTS, LLC;<br>PATRICK SNIFFEN; BRADLEY<br>R. TAMM; HOWARD M.S. HU;<br>GARY VICTOR DUBIN;<br>STEPHEN D. WHITTAKER; and<br>JOHN S. CARROLL<br>Third Party Counterclaim<br>Defendants | ) Civ. No.<br>)<br>) **NOTICE OF REMOVAL AND**<br>) **COMPLAINT PURSUANT TO**<br>) **THREE STATE-CONSOLIDATED**<br>) **CASES RIPE FOR INJUNCTIVE**<br>) **RELIEF TO ENJOIN MALICIOUS**<br>) **PROSECUTION AND DEPRIVATION OF**<br>) **RIGHTS IN REAL PROPERTY**<br>) **CONVERSION [28 U.S.C. §§ 1343(a)(1-4);**<br>) **1443 and 1450; 42 U.S.C. §§ 1981, 1983,**<br>) **1985, 1986, and 1988; and 18 USC 1964];**<br>) **COMPLAINT; DECLARATION OF**<br>) **LEONARD G. HOROWITZ AND**<br>) **SHERRI KANE; APPENDICES "A" and**<br>) **"B"; EXHIBITS 1 THRU 5; EX PARTE**<br>) **MOTION TO SHOW CAUSE;**<br>) **PROPOSED INJUNCTIVE RELIEF**<br>) **BY WRIT OF EJECTMENT;**<br>) **NOTICE OF SERVICE OF NOTICE OF**<br>) **REMOVAL; SUMMONS; CERTIFICATE**<br>) **OF SERVICE**<br>) [Filed concurrently<br>) with Civil Cover Sheet]<br>]<br>)<br>)<br>) |

### NOTICE OF REMOVAL AND COMPLAINT PURSUANT TO THREE STATE
### CONSOLIDATED CASES RIPE FOR INJUNCTIVE RELIEF TO ENJOIN MALICIOUS
### PROSECUTION AND DEPRIVATION OF RIGHTS
### IN REAL PROPERTY CONVERSION

TO THE CLERK OF THE ABOVE-ENTITLED COURT: PLEASE TAKE
NOTICE that, pursuant to 28 U.S.C. §§ 1343(a)(1-4), 1443 and 1450; 42 U.S.C.
§§ 1981, 1983, 1985, 1986 and 1988; and 18 USC 1964,
Defendants/Counterclaimants Leonard G. Horowitz and Sherri Kane, (collectively,
"Defendants" or "DCs"), hereby remove this civil action seeking injunctive relief
to prevent further irreparable harm and damage caused by deprivation of rights and
real property conversion by conspiracy under color of law; involving State actors
in three State-consolidated cases Civ. No. 05-1-0196; 14-1-0304; and 3CC17-
1000407, remanded by the Intermediate Court of Appeals (ICA) in Honolulu on
May 12, 2019, triggering new claims under the aforementioned statutes, justifying
this removal "to secure the just, speedy, and inexpensive determination" of
proceedings pursuant to Rule 1 of the Federal Rules of Civil Procedure.[1]

## A. FACTS JUSTIFYING REMOVAL AND COMPLAINT

1. This case involves an "inn" and health spa property (the "Property"; containing
two parcels, TMKs (3) 1-3-001:049 and 043) that the retired oral surgeon Dr.
Leonard Horowitz bought in 2004 for $550,000 and proceeded to invest several
hundred thousand dollars more, the bulk of his life-savings, in making
improvements to the Property.

---

[1] **Exhibits 1** and **2** show the ICA's Memorandum Opinion ("MO") and denial of Horowitz's
Motion for Reconsideration ("MfR"). Contrary to the MO's conflicting statements found on p. 5
versus footnote 11, the "non-monetary breaches to the mortgage agreement" statement conflicts
with the statement--"deprive Lee of his receipt of mortgage payments." The ICA erroneously
defied *res judicata* doctrine by falsely stating that Lee's claims for judicial foreclosure were
strictly '*non-monetary*. In fact, the MO ftnt. 11, controverts this. Lee contested not receiving
mortgage payments paid to a previous judgment creditor by Garnishment Order of the Nakamura
Court. Lee's 2005 foreclosure was largely filed to retaliate and maliciously prosecute Horowitz
for complying with the Nakamura court Garnishment Order diverting the mortgage payments.

2

2. Unknown to Horowitz, the Seller, was a convicted drug trafficker, Cecil Loran Lee, ("Lee") with resources in the underworld.

3. Soon after the sale, Lee threatened foreclosure for monetary and non-monetary default; then judicially foreclosed in 2005. Horowitz prevailed in a jury trial in 2008.[2] Lee was denied foreclosure.

4. But just before Lee's death in 2009, his successor-in-interest, Paul J. Sulla, Jr., (hereafter, "Sulla") appeared to challenge Horowitz's $200,000 jury-awarded judgment credit, months after Horowitz paid off the Mortgage and Note (the full $550,000) using that credit in the final "balloon payment" paid on February 27, 2009.

5. While Lee was dying of cancer in Arizona, Lee and Sulla et. al., evaded Notices to release the Mortgage, and on May 15, 2009, shortly before Lee's death, Sulla schemed and acted to regain the Property for Sulla's alter-ego, a corporate fiction

---

[2] Horowitz et. al. prevailed in 2008 after a jury trial in which Horowitz was awarded $200,000 in damages, a small percentage of his actual losses over four years of deprived prospective business advantage while paying timely his Mortgage payments.

    In 2009, after Horowitz made his final "balloon payment" (on February 27, 2009) then repeatedly noticed Lee et. al. to issue his Mortgage Release to no avail, Sulla suddenly appeared to contest the jury award. Lee, Sulla, et. al., argued that attorney John S. Carroll had not pled fraud with adequate 'particularity,' which the courts later affirmed to allegedly extend malicious prosecution against Horowitz, et. al.

    But worried that the Ibarra court had repeatedly denied a post-verdict untimely Rule 50a Motion for Judgment as a Matter of Law ("MJML"), and had also issued two 'Final Judgments' affirming the jury award, Sulla contemporaneously administered an Assignment of Mortgage and Assignment of Note on May 15, 2009 into the not-yet-legally-existing "church" (that the MO references as "Revitalize"). The DCs allege this was a fraudulent transfer in violation of HRS § 651-C-4.

("Revitalize"), installing Sulla's strawman (claimed to be Lee's "church," directed

by "nephew" Jason Hester) seeking to foreclose again by non-judicial foreclosure

("NJF") while the case was under appeal for deficiency judgment, fees and costs.

6. On May 12, 2019, the final appellate disposition was issued raising new claims

of malicious prosecution, against new parties, deprivation of civil rights, and

conversion of the DCs' properties.

7. On May 15, 2009, Sulla administered Assignments of Horowitz's Mortgage and

Note to the not-yet-legally-existing "Revitalize" paper "church." Two weeks later,

on May 26 and 28, 2009, Sulla faxed Revitalize's Articles of Incorporation into the

Hawaii Department of Commerce and Consumer Affairs (DCCA). This

paperwork, on its face, showed "altered" dates, altered page numbers, a wrong

signature on the General Certification page, and at least one, perhaps two,

photocopied signatures of Lee.  Subsequently, following Lee's death on June 27,

2009, Sulla substituted Revitalize for Lee in the foreclosure case (i.e., "0196"); and

while that case was under appeal Sulla claimed the jury award was an outstanding

debt on the Mortgage, justifying non-judicial foreclosure (NJF) by Revitalize.

8. On-or-about March 19, 2010, Sulla mailed a deceptive and defective HRS 667-5

"Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale" to the

DCs attorney, John S. Carroll, and within a couple of days Carroll pledged to work

with attorney Gary Victor Dubin to stop Sulla's foreclosure by filing for injunctive relief.

9. On March 31, 2010, the DCs paid Dubin $6,000 to prepare and file in court for an injunction, which he never did.

10. On April 20, 2010, Sulla committed a 'mock auction' purportedly selling the "inn" and "health spa" property to 'insider' Hester (the highest-bidder) for a 'credit bid' of $175,000. Sulla exclusively executed and verified the sale by filing an "Affidavit of Foreclosing Mortgagees Power of Sale." (See **Exhibit 1**, MO, pp. 7 and 13)

11. On June 14, 2011, Sulla secured a personal interest in the Property at the same time he conveyed the Property from Revitalize to Hester by quit claim deed. Sulla caused Hester to sign a mortgage loan for $50,000 in favor of Sulla, secured by the Property; and on June 21, 2011, Sulla filed an ejectment action in the wrong court lacking jurisdiction over title disputes. 3RC-11-1-662 was dismissed on Feb. 13, 2012.

12. On April 25, 2014, Sulla filed the same case in the same wrong court, resulting in dismissal on Aug. 11, 2014 of 3RC 14-1-466, and sanctions warning from Judge Harry P. Freitas of the State District Court.

13. On July 20, 2012, Sulla filed a SLAPP lawsuit to enjoin the DCs from publishing truth about Sulla's actions as journalists/victims and whistleblowers in Civ. No. 12-1-0417. Horowitz and Kane prevailed on August 28, 2014.

14. On August 11, 2014, Sulla filed a quiet title and ejectment action (Civ. No. 14-1-0304) removed by the Defendants to Federal Court (Civ. No. 14 00413 JMS/RLP).

15. On January 5, 2015 Magistrate Richard L. Puglisi Disqualified Sulla from representing 'sham Plaintiff' Hester as a necessary witness at trial in the quiet title action.

16. On January 8, 2015, Judge J. Michael Seabright remanded the removed case (Civ. No. 14 00413 JMS/RLP) following review and selection of seemingly conflicting statements pursuant to Horowitz's California versus 2004 Hawaii domicile neglecting Horowitz's family's return to the mainland before 2009, followed by Horowitz's "after residence" litigation-related relocation to Hawaii from California in 2011.

17. On January 11, 2015, high-priced lawyer Stephen D. Whittaker appeared to represent the homeless pauper and drifter, Jason Hester, in lieu of Sulla's Disqualification.

18. On May 19, 2015, Horowitz and Kane filed a Verified Complaint against Sulla et. al. for "Deprivation of Rights and Injunctive Relief" (CV 15 00186 JMS/BMK), claiming RICO. The DCs pled that Sulla (denied joinder by the Third Circuit Courts in each of the consolidated cases) corrupted court officers and conspired to deprive Horowitz of his due process rights, and property rights, as aided-and-abetted by willful blindness to prima facie evidence of false filings with the State and theft by illegal foreclosure and malicious prosecution.

19. On May 27, 2015, without addressing any of the substantive issues, the "0304" Court granted "Hester" summary judgment in favor of Sulla's theft scheme.

20. On "9/11" 2015, Judge Seabright administratively "stayed" the "0186" case based on "Colorado River Doctrine;" concluding "The case may be reopened upon notification by the parties that the pending state action has reached final conclusion."

21. On February 1, 2016, Sulla incorporated Halai Heights, LLC, an alleged corporate-fiction formed to transfer ownership of the Property to Sulla individually.

22. On March 1, 2016, the "0304" court issued a Writ of Ejectment in favor of Sulla's dispossession of the Defendants.

23. On March 9, 2016, Horowitz was forced into Chapter 13 bankruptcy, not only due to insolvency and inability to pay his lawyer, Margaret Wille, but trusting the

federal trustee would 'avoid' Sulla's illegal conversion of the Property under HRS § 651-C-4 and 11 U.S. Code §§ 448-550. (See: BK 16-00239; and Adv. Proc. 16-90015).

24. These bankruptcy actions terminated on-or-about March 9, 2016 by reason of Trustee Howard M.S. Hu, and his counsel Bradley R. Tamm, opposing every reorganization option justice permitted and required. They granted Sulla virtually everything he claimed was due "Hester" following the non-judicial foreclosure.

25. On March 9, 2016, Judge Robert Faris's "Memorandum of Decision Regarding Plan Confirmation" denied Horowitz all relief requested, in favor of Sulla and his co-conspirators.

26. On March 13, 2016, the Defendants appealed the 0304 summary judgment and writ of ejectment, along with other alleged improper court rulings.

27. On-or-about July 6, 2016, Sulla is alleged to have bribed State Sheriff Patrick Sniffen to fly from Kauai to Hilo to execute the conversion, wrongly justified by the invalid writ of ejectment. In fact, local sheriffs were unwilling to engage Sulla's Property conversion scheme, having the same knowledge Sniffen was given. Nonetheless, Sniffen then ejected the DCs and their Property caretakers, seizing the DCs' real and personal properties by threat of lethal force.

28. By September, 2016 Sulla transferred possession of the Property to U.S. Drug Enforcement Agency (DEA) enjoined drug trafficker, Mark Shackman, who claimed his ownership by way of Sulla's sale to him, replacing Hester as the purported "owner." (Shackman, not Hester, lives on the Property at the time of this filing.)

29. On September 6, 2016, Sulla presumably directed Hester to "sell" the Property to Halai Heights, LLC ("HHLLC") exclusively owned by SULLA, and not Mark Shackman, for $450,000; issuing a warranty deed with that transfer.

30. On April 26, 2017, Sulla filed a "Mortgage" with the State of Hawaii Bureau of Conveyances recording Sulla's $150,000 "loan" to HHLLC secured by the Property described in Exhibit "A" attached to that warranty deed dated Sept. 6, 2016.

31. On December 21, 2016, Horowitz et. al, filed CV-00666-LEK-KJM for damages compounding from Stewart Title Guaranty Company et. al.'s alleged bad faith refusal to finance title defenses against Sulla as contracted.

32. But just as Hu, Tamm, and the bankruptcy court had done, Stewart et. al. relied on Sulla's non-judicial foreclosure. They claimed Horowitz lost his interest in the Property and contract following Sulla's foreclosure. Judges Kenneth J. Mansfield

and Leslie E. Kobayashi administered the dismissal for "Failure to State a Claim"

on April 26, 2017, despite Horowitz's vigorous opposition.

33. On January 28, 2017, Defendants' attorney filed Motion to Join Paul J. Sulla, Jr.

and Halai Heights, LLC in the Intermediate Court of Appeals of the State of

Hawaii ("ICA") "0304"/"163" quiet title action as required by HRCP Rule 19, but

this motion was denied on March 3, 2017.

34. On January 6, 2017, the DCs attorney in the State cases, Margaret Wille, filed

"Appellants' Motion for Judicial Notice' exhibiting Public Records proving Sulla's

creation of HHLLC and warranty deed and sale of September 6, 2016 of the

Property to Sulla's entity, proving indisputably Sulla's real party interest.

35. On February 10, 2018, the County of Hawaii Tax Department discovered that

Sulla's warranty deed from Hester to HHLLC falsely included a neighboring lot

description (of "Remnant A") in place of the "043" foreclosed parcel; and on

February 13, 2018, the County notified Sulla about the discrepancy. That action, in

effect, voided Sulla's warranty deed and illegal transfer.

36. On July 26, 2018, the ICA consolidated the State cases (05-1-0196/"162"; 14-

1-0304/"163"; and on December 18, 2018, the ICA added CAAP 18-0000584 to

the consolidated cases.

37. On January 3, 2019, the ICA denied for the third time joining Sulla as a 'proper party' in "Order Denying Motion for Reconsideration Filed December 26, 2018 (in the "0407"/"584" consolidated case).

38. On May 2, 2019, the ICA issued its Memorandum Opinion (MO), stating that Sulla's non-judicial foreclosure did not comport with "Kondaur." Sulla's quiet title summary judgment was vacated, raising new claims against new parties.

39. On May 12, 2019, the ICA denied Horowitz's Motion for Reconsideration that urged the ICA to amend the MO to prevent further malicious prosecution in State, abuse of processes, damage to the DCs, and compounding irreparable harm.

## B. GROUNDS FOR REMOVAL

This Court has original jurisdiction over this action under 28 §§ U.S.C. 1343(a)(1-4) and 1450 on the grounds that *the DCs seek to "recover damages for injury to their persons and properties" caused by Hawaii State and federal actors who allegedly deprived the DCs' rights to due process and aided-and-abetted by willful blindness Sulla's conversion of the DCs' Property "in furtherance of [a] conspiracy [as] mentioned in section 1985 of Title 42"* (28 U.S.C. § 1343(a)(1)].

In the case at bar, the deprivation of the DCs' civil rights and Property rights are fairly attributable to the government actors and court officers who recklessly neglected to do what the ICA did so easily—conclude that "Hester's" NJF and quiet title was void, since Sulla's NJF was clearly defective. Highlighting what was obviously improper, "Hester" presumably paid $175,000 in a "credit bid" as an "insider" to convert Horowitz's $1 million spa property, by Sulla's direction. Only a

11

legal incompetent or complicit agent would not realize, and act to prevent or remedy, that inequity and presumption of guilt those facts presume.

The State agents that aided and abetted "Hester" and Sulla by such willful blindness and negligence includes Sheriff Patrick Sniffen and ODC Director, Bradley M. Tamm.[3]

Further, Tamm (as U.S. Trustee's Howard Hu's attorney), and Sniffen too, had ample opportunity to *prevent the wrongs* Sulla committed in furtherance of the conspiracy to steal the subject Property, but all three men failed to do so despite having knowledge of Sulla's illegal actions, in violation of 28 U.S.C. §§ 1343(a)(2).

As explained more fully below, this Court has subject matter jurisdiction under 28 U.S. Codes §§ 1343(a)(1-4), and 1450, and 42 U.S.C. § 1983 for damaging acts done to or "'[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof.' '28 U.S.C. § 1343 is invoked with 42 U.S.C. § 1983 because § 1983, a civil rights statute, provides a cause of action and § 1343 gives the federal courts jurisdiction

---

[3]   Sniffen, Tamm, Hu and Dubin committed overt acts to further Sulla's conspiratorial objective to seize possession of the DCs Property under color of law, and by Sulla's, Hu's and Tamm's false filings with the State and the courts. HRS §705-520 defines "Criminal conspiracy" as "A person is guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a crime: (1) He agrees with one or more persons that they or one or more of them will engage in or solicit the conduct or will cause or solicit the result specified by the definition of the offense [which is real Property theft by fraud in this case]; and (2) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy. [L 1972, c 9, pt of §1]."
   Sniffen ejected the DCs from their Property and seized the Property by threat of lethal force, and Bradley Tamm, subsequent to Horowitz's bankruptcy, became ODC Director. Tamm then aided-and-abetted the conspiracy to steal the DCs' Property again; as well as conceal Dubin's culpability at the same time. As ODC Director, Tamm neglected to recuse himself for conflicting interests. He speciously dismissed Kane's complaint requested by ODC investigators against Sulla and Sulla's allegedly bribed co-counsel Whittaker, pursuant to the ODC's efforts to further investigate and disbar Dubin, who recklessly neglected to stop Sulla's pending non-judicial foreclosure.

to hear cases arising under the civil rights statutes.'" *Dahl v. City of Palo Alto*, 372 F. Supp. 647 - Dist. Court, ND California 1974.

As Judge Seabright published in his "9/11" 2015 administrative "stay," relying on 'Colorado River Doctrine:' "Th[is] case may be reopened upon notification by the parties that the pending state action has reached final conclusion." That 'final conclusion' after fourteen-years of litigation was reached on May 2 - 12, 2019 by the ICA's issuance of their Memorandum Opinion ("MO"; **Exhibits 1** and **2**) that substantially evidences malicious prosecution, deprivation of rights, and the unlawful seizure of the Horowitz's Property by the State courts and agents—precisely the reasons these Defendants sought federal protection in the Seabright Court in 2015 (and other federal courts previously and subsequently).

In other words, this Court's application of Colorado River Doctrine, suitable or not, substantially contributed to the deprivations, distress, and irreparable harms suffered by the Defendants in State during the past four years, justifying this new pleading for removal and injunctive relief against the alleged public corruption therein, and conspiracy to deprive the Defendants of their rights and properties.

Assuming, nonetheless, this Court chooses to further rely on Colorado River Doctrine, the recent analysis in *UNITED STATES FIRE INSURANCE COMPANY v. HAWAIIAN CANOE RACING ASSOCIATIONS*, Dist. Court, D. Hawaii 2019, might be helpful in proceeding with the new claims, new parties, and/or lifting the stay that has damagingly delayed federal actions on claims already granted by Judge Seabright in the "0185" case. Severing some claims at this point does not comport with FRCP Rule 1 for efficiency, economy, or justice.

## 1. 'Colorado River' Analysis Encourages Federal Adjudication on the Claims

Favoring Removal and federal adjudication of the Claims, "[t]his Court has considered the following factors, . . . :" (*Id.*)

13

(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

[R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966,] 978-79 [(9th Cir. 2011)]. Some factors may not apply in some cases, and "[a]ny doubt as to whether a factor exists should be resolved against a stay" or dismissal. Seneca Ins. Co. [v. Strange Land, Inc.], 862 F.3d [835,] 842 [(9th Cir. 2017)] (quoting Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990)).

When it is appropriate for a court to decline to exercise jurisdiction pursuant to the Colorado River doctrine, we generally require a stay rather than a dismissal. Attwood v. Mendocino Coast Dist. Hosp., 886 F.2d 241, 243 (9th Cir. 1989). A stay "ensures that the federal forum will remain open if for some unexpected reason the state forum. . . . turn[s] out to be inadequate." Id. (internal quotation marks omitted).

Montanore Minerals, 867 F.3d at 1166 (some alterations in Montanore Minerals). (*Id.*)

In the three consolidated-cases justifiably removed here pursuant to 28 §§ U.S.C. 1343(a)(1-4) and 1450, with the DCs alleging and evidencing public corruption and racketeering in organized crime, the State forum "turn[s] out to be [grossly] inadequate." (*Id.*)

The State proceedings have not only failed to "adequately protect the rights of the federal litigants;" but have blatantly deprived those rights as detailed in the attached Appendix "A." Eleven violations of Horowitz et. al.'s rights to substantive and procedural due process are detailed.

One example raises the question of "whether federal law or state law provides the rule of decision on the merits." The MO caused to be "waived" such important review of the lower court's failure to rule 'on the merits' of the decision to vacate Horowitz's $200,000 jury award. In effect, the State court effectively seized Horowitz's $200,000 jury award without due process on the merits.

14

To do this 'unconscionable' malice, in fact, the ICA blatantly misrepresented HRAP Rule 10, and defied their own Judge Foley's ruling. Judge Foley ruled not to impose needless costly transcripts void of substantive evidence to examine the merits of the lower court's decision to vacate that jury award. This, after Judge Ibarra himself memorialized in the subject hearing minutes, "A JURY'S VERDICT SHALL NOT BE IMPEACHED, . . . " Any competent lawyer could see that no timely Rule 50a MJML motion was made prior to the jury retiring. That rule violation alone, plainly visible in the Record on Appeal, would preclude the "waiving" of this error, opposite to what the ICA recklessly or maliciously administered. For what purpose? Only to extend Horowitz's malicious prosecution in that 0196 case and court.

This is just one of eleven actions evidencing the State courts' malicious prosecution and abuse of process depriving the DCs' Constitutional rights against seizure of protected rights and properties.

The first factor of Colorado River encourages the stay, were it not for the fact that the Property was illegally converted by alleged criminal complicity of the State court officials who harbored Sulla, concealed his crimes, and covered-up for each other.

"The second factor weighs against a stay because there has been no showing that this district court is an inconvenient forum for any of the parties that would be affected by a stay." Op. cit. *UNITED STATES FIRE INSURANCE COMPANY.* In fact, the Seabright Court record proves that sham Plaintiff Hester is not able to be served. His whereabouts have been concealed by Sulla who won't accept service for Hester. And Sulla remains the un-joined real "proper" party in interest, who is

no stranger to this Court. Nor are the other newly named local Honolulu defendants.[4] Accordingly, the second factor favors the Honolulu federal venue.

"The third and fourth factors — the desire to avoid piecemeal litigation and the order in which each forum obtained jurisdiction — weigh" (*Id.*) heavily against further stay. The 2015 stay caused 'piecemeal litigation' including Sulla's filing of the 0584 expungement case, Horowitz's bankruptcy, and Horowitz et. al.'s need to file the Stewart Title case. Now, the ICA's MO directs two re-litigations ("0304" and "0584")—both as though they never happened. The "order in which each forum obtained jurisdiction" is equipoise.

The fifth factor weighs heavy in favor of this Removal because the instant case(s) raise federal law claims, intertwined with Hawai'i law claims evaded. For instance, the State courts evaded the statute invalidating fraudulent transfers, HRS § 651C-4. Since "this Court is fully capable of applying the relevant Hawai'i authority," (*Id.*) federal court jurisdiction in Honolulu is most proper.

---

[4] On November 15, 2012, Judge Seabright concluded that Sulla committed misrepresentations in *Benoist v. U.S. Bank Nat'l Ass'n, as Trustee for JPM ALT 2006-A6, et al.*, Civ. No. 10-00350JMS-KSC. The Hilo lawyer apparently strung his clients--the Benoists--along through abusive processes, causing them to lose money and their property, much like in Horowitz's case, through a foreclosure that Sulla could have prevented. "Sulla simply got the [foreclosure] dates wrong," Judge Seabright found. "In other words," Seabright concluded, "Sulla was aware that the foreclosure could very well go forward." Sulla appears to have defrauded the Benoists into believing he had done everything to stop the foreclosure, when actually he acted to permit it.

Severe social damage has occurred since 2015 when Judge Seabright avoided Sulla's self-incriminating misrepresentation of the U.S. Supreme Court's ruling in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Sulla falsely claimed his 'religious' drug trafficking enterprise was condoned by the highest court. Judge Seabright subsequently quashed evidence indicting Sulla and his lead witness, Alma C. Ott (alias, Dr. True Ott) in CV 15-00186 JMS-BMK. Those actions by the Court enabled Americans nationwide to be damaged and influenced by either Sulla's drug-trafficking enterprise, or Ott's neo-Nazi, anti-government, anti-Semitic, White Supremacist propaganda.

Subject matter jurisdiction, therefore, heavily favors Removal.

16

The eighth factor weighs heavy in favor of removal, and lifting the stay on the 2015 pending claims, because only this Court can resolve all issues that have multiplied under the State's alleged conspiracy to deprive the DCs' rights and properties.

Finally, the seventh factor is inapplicable because there is substantial evidence now, that Horowitz and Kane, having sustained irreparable harm, physical illnesses, and several mental/emotional distress, and non-recoverable loss of prospective business advantages, proximal to the actions of the named State and federal court abusers. Given this history, it would shock-the-conscious to claim the DCs were 'forum shopping.'

Accordingly, it would be grossly unreasonable, unjust, and further irreparably-harming, to oppose this Removal based on any argument, including Colorado River Doctrine that favors Removal.


**2. Removal is Required to Redress the DCs' Deprivation of Federal Rights by Malicious Prosecutions in the State Courts.**

This Removal is required to redress the deprivation of rights and properties made clear by the MO that evidences the State judiciary's willful blindness to Sulla's abuse of the courts with Hester and co-counsel Whittaker, depriving the DCs' substantive and procedural due process, aiding-and-abetting malicious prosecution and theft of the DCs' properties.

As mentioned, the MO effectively diverts from and conceals Sulla's alleged fraud, criminal actions, and related liability, by simply assigning the subject conversion of property to "Revitalize." Sulla is harbored, despite the ICA finding that Sulla's NJF did not meet the muster of *Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawai'I 227, 240, 361 P. 3d 454, 467 (2015). The ICA's 'final' ruling and remand simply enables more malicious prosecution, distress, and illness, to be

17

imposed by the concealed instigator, Sulla, furthering the State courts' deprivation of the DCs rights.

Given the history of this case, and the eleven defects evidenced by the ICA's MO (as detailed in Appendix "A") it is most reasonable to conclude the State courts' pattern-and-practice of depriving, damaging, and distressing Horowitz et. al., to gain the DCs' attrition, submission, and Property conversion is the State agents' *modus operandi*.

This unsettling conclusion is corroborated by the wrongful conversion of the DCs' properties furthered by Hu, Tamm, and Dubin who (aside from Carroll's negligence in pleading fraud without adequate 'particularity') helped Sulla possess the DCs' Property, that was seized illegally by Sniffen as another co-conspirator.

These State actors acted wrongly under color of State law (e.g., statute HRS § 667-5), recklessly neglecting what the ICA readily recognized—Sulla's NJF did not satisfy **Kondaur**. Standard 'custom and usage' did not permit wrongfully exercising powers to neglect also HRS § 651-C-4 (fraudulent transfer preclusions), as Sniffen, Tamm, Hu, Dubin and the courts did.

The DCs seek to redress this depravity pursuant to 28 U.S.C. §§ 1343(a)(3), with redress by injunctive relief, attachment, and rescission, granted under 28 U.S.C. §§ 1343(a)(4). Given the history of these cases, 28 U.S.C. §§ 1343(a)(4) appears to be the only reasonable recourse and remedy available promptly in federal court.

The DCs file here, now, for Removal and Injunctive Relief by way of attachment of the alleged illegally-converted Property, respecting this Court's power to do so granted by 28 U.S.C. § 1450. (See Appendix "B" for Applicable Rules and Laws).

The DCs should not be made to endure another minute in the State courts that have effectively raped their good faith and savaged their trusting spirits. The

Supreme Court in *King v. Smith*, 392 US 309 - 1968 reiterated "that a plaintiff in an action brought under the Civil Rights Act, 42 U. S. C. § 1983, 28 U. S. C. § 1343, is not required to exhaust administrative remedies, where the constitutional challenge is sufficiently substantial, as here, . . . *Damico* v. *California,* 389 U. S. 416 (1967). See also *McNeese* v. *Board of Education,* 373 U. S. 668 (1963); *Monroe* v. *Pape,* 365 U. S. 167, 180-183 (1961).

Further, "While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'") (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?") (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Here, the judicial branch of government(s) maliciously prosecuted the DCs, or permitted their malicious prosecution under Sulla's secreted influence, to infringe upon their federal rights. The remedy must therefore be *federal.*

There is a 'common nucleus of operative facts' to authorize federal jurisdiction for damages under 28 U.S.C. § 1343(a)(1-4) arising under State law (including HRS § 651-C-4) and the prejudicial tainting of State and federal proceedings as detailed above. The court in <u>United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)</u> "authorize[d] a pendant federal jurisdiction for damage claims arising under state law, where there is a federal claim of sufficient substance to confer subject matter jurisdiction on the courts. That jurisdiction exists if there is a 'common nucleus of operative fact.' There is no question but that in this case the claims for injunctive [relief]. . . and the claims for damages have a common nucleus of operative fact." (*Spotted Eagle v.*

19

*BLACKFEET TRIBE OF BLACKFEET INDIAN RES., CITY OF BROWNING*, 301
F. Supp. 85 - Dist. Court, D. Montana 1969).

In the case at bar, the 'common nucleus of operative fact' is deprivation of civil
rights to due process, both procedural and substantive, and the deprivation of property
rights. "The concept of 'substantive due process,' . . . forbids the government from
depriving a person of life, liberty, or property in such a way that 'shocks the
conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"
*Nunez v. City of Los Angeles*, 147 F. 3d 867 – Court of Appeals, 9th Circuit 1998.

This 'interference' that 'shocks the conscious' justifies Removal by reason
of the aforementioned examples from the eleven (11) 'operative facts' (detailed in
Appendix "A"). The State courts have neglected the DCs' dispossession and
ejectment from their Property; and Sulla's current possession of the Property. The
State courts have remained willfully blind to Sulla's conflicting interests,
corroborated fraud, and multiple alleged crimes. Each of the lower courts, as well
as the ICA, has perpetuated malicious prosecutions and deprivations of the DCs'
rights to fair play and equal justice under the law.

This activity of the State courts across the board precisely satisfies the
definition of 'harboring' a criminal provided in *United States v. Acosta de Evans*,
531 F. 2d 428 - Court of Appeals, 9th Circuit 1976, that states: "Standard
definitions of 'harbor' include both concealment and simple sheltering, although
the latter appears to be the primary meaning." The lower courts and the ICA
blatantly conceal Sulla's conflicting interests and wrong doing. They repeatedly
neglected Rule 19 joinder requirements; and they have all simply sheltered Sulla
from being held accountable for his actions. They have all insisted instead to go
along with Sulla's ruse that "Revitalize" did all the dirty work, or that Hester is
solely responsible. Despite receiving Judicial Notice of Sulla's alter-ego HHLLC

20

being in possession of the Property, and on County Tax Records being declared the current Property "owner."

## C. The Other Prerequisites for Removal are Satisfied.

This Notice of Removal is timely filed. The relevant statute provides that "[e]ach defendant shall have 30 days after receipt . . . of the initial pleading . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). A copy of the initial pleading is attached as **Exhibits 1 and 2**, dated May 2nd and May 12th, respectively. None of the Counterclaim Defendants, Sulla, Sniffen, Tamm, Hu, Dubin, Whittaker, or Carroll have been served with a copy of the Summons or Complaint, as of the date of the filing of this Notice of Removal.

This action is properly removed to the United States District Court for the District of Hawaii, which is "the district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a).

Quoting 28 U.S.C. § 1446, pursuant to the MO serving as the 'initial pleading,' *Harris v. Bankers Life and Cas. Co.*, 425 F. 3d 689 - Court of Appeals, 9th Circuit 2005, states: "[T]he 'thirty day time period [for removal] ... starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face" the facts necessary for federal court jurisdiction. (*Id*) *see also Lovern v. General Motors Corp.,* 121 F.3d 160, 162 (4th Cir.1997) ("[W]e will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case . . . requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper.")." (*Harris*, Op. cit.) The statements made by the ICA in the MO, and responsively in this Notice of Removal, adequately serves as grounds for the Complaint; that the Court may require the DCs to supplement or amend as needed in the interest of justice.

Title 28 U.S.C. § 1446(a) requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action (cases Civ. No. 05-1-0196; 14-1-0304; and 3CC17-1000407) to be included with this Notice of Removal. The DCs were served by JEFS online, and have attached these papers hereto as **Exhibits 1 and 2,** along with the Summons and Civil Case Cover Sheet.

In addition, the DCs attach hereto their **"Ex Parte Motion for Order to Show Cause** [Why 'Writ of Ejectment' Should Not Issue for Horowitz et. al.'s Repossession of the Wrongly Foreclosed Subject Property Within 30 Days of Hearing on the Motion, or Sooner.]"

In addition, Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Parties of Removal to Federal Court, is also attached hereto, together with this Notice of Removal, will be served upon the Counterclaim Defendants or their counsel, and will be filed with the clerk of the Third Circuit Court in Hilo.

By filing this Notice of Removal, the DCs do not waive their right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert.

If any question arises as to the propriety of the removal of this action, the DCs respectfully request the opportunity to submit briefing and oral argument and to conduct discovery in support of their position that subject matter jurisdiction exists.

Dated: Honolulu Hawaii: May 31, 2019

Signed:   /s/Leonard G. Horowitz          Signed:   /s/Sherri Kane

LEONARD G. HOROWITZ                         SHERRI KANE

Hester vs Horowitz et al, *ICA No. CAAP-16-0000162; CAAP-16-0000163; CAAP-17-0000584 Notice of Removal and Complaint; Exhibits "1" thru "5".*

22